IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS,<br><br>*Plaintiff,*<br>v.<br><br>SUNRISE COMMUNITY CHURCH, INC. D/B/A SUNRISE HOMELESS NAVIGATION CENTER, MARK HILBELINK; REAL PROPERTRY KNOWN AS 4430 MENCHACA ROAD<br><br>*Defendants.* | Civil Action No. 1:25-cv-00005-DII |

## EMEREGENCY MOTION TO REMAND

The Court should remand this case back to the 126th Judicial District Court in Travis County, Texas, and award Plaintiff, the State of Texas, all costs and expenses related to Defendants' plainly meritless removal.

## INTRODUCTION

The State of Texas filed its Original Petition for Injunctive Relief & Application for Temporary Injunction ("Petition") in State Court against Defendants Sunrise Community Church, Inc. d/b/a Sunrise Homeless Navigation Center, Mark Hilbelink, and the real property known as 4430 Menchaca Road (collectively, "Sunrise").

Sunrise is a magnet for a drug-addicted and dangerous population that inflicts serious harm around the surrounding area, including an elementary school next door. The State has assembled a massive record showing that nearby residents and children, many of whom attend Joslin Elementary School (located a mere 200 feet away from Sunrise), witness "public drug use, drug sales, public urination and defecation, fights among the homeless, and nudity and public

fornication." ECF 7-1 at 16.  Sunrise patrons leave needles and used condoms on school property. ECF 7-1 at 12 and 21.  They harass families on the way to school. ECF 7-1 at 19. They block sidewalks and enter the roadways in drug-induced states. ECF 7-1 at 11, 19, and 22. Homes and businesses in the area are routinely broken into. ECF 7-1 at 16, 17, and 22.  The neighborhood park is peppered with used syringes. ECF 7-1 at 10, 14, 15, and 18.  One resident has had her home broken into at least five times in the last three years. ECF 17-1 at 16.  Another resident presently lives in fear as she regularly witnesses a man at Sunrise who trespassed into her home—half-naked— while she was inside. *Id.*

Texas filed a common nuisance and public nuisance suit to put a stop to this disruption and restore the communities' right to its public spaces. Then, mere days before an evidentiary hearing on the State's application for a temporary injunction, Sunrise filed its Notice of Removal, bringing the state court proceedings to a halt, and allowing the conditions alleged in the State's Petition to persist.

Sunrise's removal is improper because it incorrectly invokes federal question jurisdiction when no federal question exists. Sunrise's only asserted basis for federal question jurisdiction is that federal law—either "the Religious Land Use and Institutionalized Persons Act and/or the Free Exercise Clause of the [the] First Amendment protect Sunrise Church's activities." Notice of Removal ¶ 25.  But it is hornbook law that "a case may not be removed to federal court on the basis of a federal defense." *Franchise Tax Bd. v. Laborers Vacation Tr.*, 463 U.S. 1, 14 (1983). There is no exception to that rule for religious freedom claims. *See City of Brunswick, Ga. v. Se. Educ. Servs.*, 2023 WL 5228923, at *1 (S.D. Ga. Aug. 15, 2023) (remanding materially similar case in the face of materially similar defenses).

Accordingly, the State files this Emergency Motion for Remand to return this matter to the state court so that urgently needed injunctive relief may be obtained.

## BACKGROUND

On November 26, 2024, the State of Texas filed its Original Petition for Injunctive Relief and Application for Temporary Injunction. Texas sought to have the Court hear its Application for Temporary Injunction at the earliest time possible, and crucially, before the students and staff at Joslin Elementary returned from winter break on January 7, 2025.[1] The State diligently undertook efforts to ensure that a timely hearing could occur, and that Sunrise would have ample time to prepare for it. Specifically:

On November 27, the State emailed Mark Hilbelink with along with a file-marked copy of the petition and requested that Mr. Hilbelink forward representation information *as soon as possible*. Exhibit 1.

On December 3, 2024, Defendant Mark Hilbelink, the Executive Director of Sunrise, was properly served with the lawsuit. ECF 1 at 62. Two days later on December 5, 2024, the other Defendants were served. ECF 1 at 66, 69.

On December 3, 2024, the State emailed Mark Hilbelink again requesting that Mr. Hilbelink provide his attorney's information. In the same email, Plaintiff also told Mr. Hilbelink that the State intended to set the Temporary Injunction hearing the week of January 6, 2025, and wanted to know his thoughts on the date. The State informed him the hearing would be set if he did not respond by 4:30 PM. Exhibit 1.

On December 3, 2024, a board member emailed counsel for the State and requested no

---

[1] *See* AISD school calendar
https://www.austinisd.org/sites/default/files/dept/ctfc/docs/Calendar_2024_2025_5_0.pdf.

hearings be set until counsel had been obtained. This board member, an attorney, stated he was not representing Defendants, and also stated the State *would be the first to be notified* as soon as counsel had been obtained. ECF 1 at 73.

After its attempts to contact Defendants about scheduling a hearing were unsuccessful, the State noticed a hearing on its application for a temporary injunction for January 6, 2025. A notice for that hearing was served on Defendants via personal service and e-mail on December 5, 2024. Exhibit 2; ECF 1 at 79. In that email, Plaintiff told Mr. Hilbelink that Plaintiff had received an email from an attorney not representing Defendants, but that the request from this attorney to not set anything was not a viable option due to the rotating dockets of Travis County. *Id*.

On December 27, 2024, Defendants filed their Answer to Plaintiff's Original Petition. At no time prior to its answer did defense counsel contact counsel for the State.

On Monday, December 30, 2024, the State's counsel emailed Defendants' counsel for the purpose of introductions and requesting a time to discuss the Temporary Injunction hearing. Defense counsel replied back six hours later indicating the hearing "should not proceed for two reasons" pertaining to State court procedure and the underlying merits. Exhibit 3. Defense counsel did not indicate that a notice of removal was forthcoming.

Later that day, counsel for the State again e-mailed defense counsel and explained that Travis County local rules require the submission of an announcement form in advance of the temporary injunction hearing and reiterated a request for a quick phone call in order to confer. *Id*.

On December 31, 2024, defense counsel responded that he would be available to speak two days later on Thursday afternoon, and again stated "the hearing shouldn't happen," but without any mention of the forthcoming notice of removal. *Id*.

That same day, counsel for the State e-mailed defense counsel to notify him the State had

diligently been attending to procedural requirements for the hearing mandated by the state court and explained that despite Sunrise's position that the hearing "*should* not" go forward, the State still needed to continue preparations. *Id*. Counsel for the State offered to discuss the exchange of witness and exhibit lists and requested defense counsel provide more information regarding the defenses alluded to in the prior e-mail. *Id*.

After receiving no response, counsel for the State e-mailed defense counsel on January 2, 2025, and asked if there was time to speak on the phone that day, or the next. *Id*. Defense counsel agreed to a call at 4:00 that afternoon, but again made no reference to the forthcoming Notice of Removal.

On January 2, 2025, Defendants filed their Notice of Removal approximately one hour and fifteen minutes before the call the parties had scheduled.

**ARGUMENT**

The removing party bears the burden of establishing the case was properly removed. *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014). Only the theories properly raised in a removal petition may serve as the basis for removal. *Crow v. Melton*, Case No. 3:17-cv-3103-N-BN, 2018 WL 10419358, at *11 (N.D. Tex. Feb. 20, 2018). "Any 'doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.'" *Id*. (quoting *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Accordingly, contested issues of fact and ambiguities of law are resolved in favor of remand. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).

The State's Petition sets out two state-law causes of action: (1) a claim under Texas' common law nuisance, and (2) a claim under Texas' common nuisance statute (Texas Civil Practice

& Remedies Code Chapter 125). Sunrise's argument for removal focuses exclusively on the second claim. In short, Sunrise highlights a provision of the Texas common nuisance statute that excludes activities that are "exempted, authorized, or otherwise lawful activity regulated by federal law," and argues the state "artfully pleaded" around this provision, which Sunrise goes on to mischaracterize as "necessarily rais[ing]" a federal issue. ECF 1 at ¶¶ 23, 25 (citing Tex. Civ. Prac. & Rem. Code § 125.0015(e)).

### a. This Court lacks jurisdiction because the State's suit does not raise a federal question.

"The well-pleaded-complaint rule has long governed whether a case 'arises under' federal law for purposes of § 1331." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). "Under this rule, a case 'arises under' federal law if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Texas v. Melton*, Case No. A-16-CA-863-SS, 2016 WL 4718434, at *1 (W.D. Tex. Sept. 9, 2016) (quoting *Franchise Tax. Bd. of Cal. v. Constr. Laborers Vacation Tr. For S. Cal.*, 463 U.S. 1, 27–28 (1983)). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpiller Inc. v. Williams*, 482 U.S. 386, 392 (1987). "To determine whether jurisdiction is present for removal, [federal courts] consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

The State has not pleaded a federal cause of action in its Petition, nor does Sunrise allege such. Nevertheless, Sunrise claims that the State's claim arises under federal law sufficient for federal question jurisdiction based on a tortured interpretation of Texas' common nuisance statute. The statute contains a savings clause stating that codifies an ordinary preemption principle—

namely, that the statute does not reach conduct that is protected "by federal law." Tex. Civ. Prac. & Rem. Code § 125.0015(e). The implication of Sunrise's position is that this codification of ordinary preemption principles means that every single case relying on the Texas nuisance statute "necessarily raise[s]" a federal issue.

Sunrise is wrong. "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Caterpillar Inc. v Williams*, 482 U.S. 386, 393, (1987). "The well-pleaded complaint rule focuses on whether the plaintiff has affirmatively alleged a federal claim, thus providing a basis for federal jurisdiction; anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal question jurisdiction." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008). That is so *even if* the federal "defense is anticipated in the plaintiff's complaint," and "even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393. No such extraordinary circumstances exist here, and the State's case instead implicates many questions of pure State law. But even if Sunrise's federal defenses predominated the State suit, that still would not suffice. *Id*.

Sunrise's reference to the artful pleading doctrine is entirely misplaced. ECF 1 at ¶ 23. The artful pleading doctrine, which is "an 'independent corollary' to the well-pleaded complaint rule," provides that "'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'" *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (quoting *Franchise Tax. Bd. of Cal.*, at 22). But the provision of Texas's common nuisance law that Sunrise places so much emphasis on (subsection 125.0015(e)) is *not* an element of the State's claim. *See Laurell v. Anderson*, No. 2:15-CV-2993, 2016 WL 4573994, at *2 (S.D. Ohio Sept. 1, 2016) (Rejecting arguments made under both the artful pleading doctrine and the substantial question doctrine,

"Defendants argument that because its First Amendment rights are impinged by Plaintiffs' rights [under its nuisance claim] does not recognize the spirit of the artful pleading exception, which only looks to the claims *asserted by a plaintiff*."). That is obviously so because if it were an element, that would mean every State plaintiff pleading a common nuisance claim would need to disprove the existence of a federal defense. But, to the contrary, *not a single* one of the many reported opinions on the common nuisance statute evaluates whether this defense was affirmatively disproved by the plaintiff. That underscores the obvious: disproving this defense is not an element of the plaintiff's case. Instead, to succeed on its common nuisance claim, the State must only prove Sunrise (1) maintains a place to which persons habitually go for the purposes of committing certain enumerated crimes; (2) knowingly tolerates the activity; and (3) fails to make reasonable attempts to abate the activity. *See Kim v. State*, 451 S.W.3d 557, 561 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The result of Sunrise's interpretation is that *every* plaintiff[2] who brings a common nuisance action in Texas will subject themselves to a federal court's jurisdiction—even if the facts of a particular case have nothing to do with an activity exempted, authorized, or regulated by federal law.

That Sunrise raised such defenses in its answer to the State's petition belies the arguments Sunrise has made in this Court. Sunrise has raised defenses arguing the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"; 42 U.S.C. §§ 2000cc, et seq.) protect its activities complained of in the petition. Sunrise's Answer at 2. Further, the RLUIPA explicitly creates a cause of action or defense that religious institutions

---

[2] Texas law authorizes a suit to enjoin and abate a common nuisance to be brought "by an individual, by the attorney general, or by a district, county, or city attorney." Tex. Civ. Prac. & Rem. Code § 125.002(a).

may bring *against* land use regulations imposed by government. *See* 42 U.S.C. §§ 2000cc-2. It is not intended for governments to raise in their own pleadings and the Texas nuisance statute does not create a requirement that a plaintiff address it when it has not been raised as a defense.

Sunrise gestures toward, and then tries to get around, this point in its Notice of Removal by stating that: "Had the Texas AG extended the courtesy of giving notice of the State's intent . . . there is no question that [Sunrise] could have filed a lawsuit in federal court alleging a violation of RLUIPA and the First Amendment." ECF 1 at ¶ 28. But, for good measure, that course of action would have likewise failed because it is well-established under *Younger v. Harris*, 401 U.S. 37, 43-45 (1971), that federal courts do not enjoin State enforcement actions. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (*Younger* abstention applies to "civil enforcement proceedings"). That would be true even if Sunrise had won the race to the courthouse. *See, e.g.*, *Hicks v. Miranda*, 422 U.S. 322, 349 (1975) (*Younger* abstention "appl[ies] in full force" regardless of who wins the race to the courthouse).

In the state court, Sunrise raised the RLUPIA issue the way it is intended—as a defense—but that is no basis for federal question jurisdiction. *See Cnty. of Los Angeles v. Sahag-Mesrob Armenian Christian Sch.*, No. CV 09-560 SVW JWJX, 2009 WL 737061, at *2 (C.D. Cal. Mar. 18, 2009) (Remanding nuisance claim removed by religious school where school asserted RLUIPA defense); *See City of Brunswick, Ga. v. Se. Educ. Servs.*, 2023 WL 5228923, at *1 (S.D. Ga. Aug. 15, 2023) (same).

Sunrise also references a more ambiguous First Amendment Free Exercise argument, which, once again, is only a defense to the State's causes of action and therefore irrelevant to federal question jurisdiction. *Cnty. of Bexar v. Martin*, No. SA-22-CV-00374-XR, 2022 WL 2806851, at *4 (W.D. Tex. July 18, 2022) ("…the First Amendment…. raised as a defense…. [a]s

[defendant] has been reminded time and again… does not create federal question jurisdiction.). Neither RLUIPA nor the First Amendment offer an exception to the rule that defenses do not create federal jurisdiction, and the Notice of Removal fails to argue otherwise.

    b.  **The elements of the substantial federal question doctrine are not met.**

Under the substantial federal question doctrine, federal jurisdiction exists only if four elements are satisfied: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008); ECF 1 at ¶ 24.

While vague, Sunrise appears to argue every case that could restrict a church's activities belongs in federal court under the substantial question doctrine simply because everything a church does is protected by the first amendment. ECF 1 at ¶ 25. This is nothing but a reframing of Sunrise's defenses in an attempt to evade the aforementioned principle that defenses do not give rise to federal jurisdiction. Furthermore, even as a pure merits matter, "[t]he Free Exercise Clause never has immunized clergy or churches from all causes of action alleging tortious conduct." *Tilton v. Marshall*, 925 S.W.2d 672, 677 (Tex. 1996).

Under almost identical facts, another federal court remanded a state law nuisance action against a church raising a first amendment defense and making the same "substantial question doctrine" argument raised by Sunrise. *See City of Detroit v. Soul Tribe Int'l Ministries*, No. 23-12828, 2024 WL 2782104, at *3 (E.D. Mich. May 30, 2024). In that case, the Court correctly determined that the first amendment issues raised by the defendant church were defensive in nature, thus they did not create federal jurisdiction under the well pleaded complaint rule. *Id*. at *2. Analyzing the rule, the court held that because the plaintiff's complaint relied only on state

nuisance law and did not reference federal law or otherwise present a federal issue, remand was appropriate. *Id*. at *3.

Here, Sunrise erroneously argues that the state nuisance law requires proving that Federal law does not apply, somehow conferring federal jurisdiction on every application of that state law. As addressed by *Kim v. State, supra*, this is not the case. Instead, the burden is on defendants to prove their defenses, putting this court's analysis squarely within the rule that a defendant's federal defenses do not create federal jurisdiction. *See Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 413 (3d Cir. 2021) (Federal defense did not raise federal issue for purposes of the substantial federal question doctrine analysis).

Even if Sunrise's defenses could raise a federal issue, it would not be a substantial one. "It is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue . . . [t]he substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013) (emphasis original). But Sunrise has offered no discussion on this point, it offers only the conclusory statement that the "federal issues are not only substantial, they are *critical* to adjudicating this case." ECF 1 at ¶ 27 (emphasis original). But that is exactly the point the *Gunn* Court highlighted as incorrect. Whether a particular issue is substantial to a particular case is taken as a given, what actually matters is whether that issue is important to the entire federal system—something Sunrise has not alleged, nor argued. As such, Sunrise failed to carry their burden on this point and it cannot support removal.

Finally, Sunrise's claim of federal jurisdiction "reaches so broadly that it would sweep innumerable state-law… claims into federal court", failing the fourth necessary element of the test. *See Singh*, at 340. Under Sunrise's analysis, any state law tort claim that would restrict the

activities of a church would implicate the First Amendment and the RLUIPA and would therefore be subject to federal court jurisdiction, greatly upsetting the balance of federal and state judicial responsibilities.

## COSTS

The Court should award the State costs and expenses because Sunrise's Notice of Removal lacks any basis in law or fact. Sunrise's removal of this matter was at best a transparent attempt to avoid a temporary injunction hearing.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[T]he propriety of the defendant's actions in removing the case is central to the determination of whether fees are awarded." *Avitts v. Amoco Production Co.*, 111 F.3d 30, 32 (5th Cir. 1997). The appropriate expenses are those that "would not have been incurred had the case remained in state court." *Id*.

As a result of Sunrise's improper removal, the State has incurred costs related to responding to the removal and preparing for a T.I. hearing in state court that Sunrise knew was never going to happen. Instead of communicating to the State that the hearing would certainly *not* go forward, Sunrise delayed any meaningful conversation until after it filed its Notice of Removal.

The consideration of this point would be incomplete without also mentioning the dozen or more witnesses who had arranged to appear in state court and tell their story.

## CONCLUSION

As set out above, and in the State's Petition, the risk that residents near sunrise will be the victims of criminality, the communities' ability to use public spaces, and the disruption to the nearby elementary school is ongoing. As such, the State request the Court give this Motion expedited consideration. The Court should grant the State's Motion for Remand and award it just

expenses and actual costs against Sunrise resulting from the improper removal.

                                        Respectfully Submitted:

                                        KEN PAXTON
                                        Attorney General of Texas

                                        BRENT WEBSTER
                                        First Assistant Attorney General

                                        RALPH MOLINA
                                        Deputy First Assistant Attorney General

                                        JAMES LLOYD
                                        Deputy Attorney General for Civil Litigation

                                        JOHNATHAN STONE
                                        Chief, Consumer Protection Division

                                        <u>/s/ *Clayton Watkins*</u>
                                        **CLAYTON WATKINS**
                                        Assistant Attorney General
                                        State Bar No. 24103982
                                        Office of the Attorney General of Texas
                                        Consumer Protection Division
                                        300 W. 15th St.
                                        Austin, Texas 78701
                                        Phone: (512) 463-2185
                                        Fax: (512) 473-8301
                                        Clayton.Watkins@oag.texas.gov

                                        **JOHN C. HERNANDEZ**
                                        Assistant Attorney General
                                        State Bar No. 24095819
                                        Office of the Attorney General of Texas
                                        Consumer Protection Division
                                        112 E. Pecan Street, Suite 735
                                        San Antonio, Texas 78205
                                        Phone: (210) 225-4191
                                        Fax: (210) 225-1075
                                        JC.Hernandez@oag.texas.gov

                                        **KARYN A. MEINKE** (*pro hac vice forthcoming*)
                                        Assistant Attorney General
                                        State Bar No. 24032859
                                        Office of the Attorney General of Texas

Consumer Protection Division
112 E. Pecan Street, Suite 735
San Antonio, Texas 78205
Phone: (210) 225-4191
Fax: (210) 225-1075
Karyn.Meinke@oag.texas.gov

ATTORNEYS FOR THE STATE

## **CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for the State conferred with defense counsel about the relief sought by this motion and Defendants are opposed.

/s/ *Clay Watkins*
**Clayton Watkins**

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2025, a true and correct copy of the foregoing document was electronically filed with the clerk of the Court using the electronic case filing system, which automatically provided notice to all attorneys of record.

/s/ *Clay Watkins*
**Clayton Watkins**