IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:25-CV-5-RP |
| SUNRISE COMMUNITY CHURCH, INC. d/b/a SUNRISE HOMELESS NAVIGATION CENTER, MARK HILBELINK, and REAL PROPERTY KNOWN AS 4430 MENCHACA ROAD, | § § § § § § § | |
| Defendants. | § § | |

**ORDER**

Defendants Sunrise Community Church, Inc. d/b/a Sunrise Homeless Navigation Center ("Sunrise"), Mark Hilbelink ("Hilbelink"), and Real Property Known as 4430 Menchaca Road (collectively, "Defendants") removed this case to this Court on January 2, 2025. (Dkt. 1). Before the Court is Plaintiff State of Texas's ("Texas") motion for remand. (Dkt. 8). Defendants filed a response, (Dkt. 14), and Texas filed a reply, (Dkt. 15). Having considered the briefing, the applicable law, and the record, the Court grants Texas's motion to remand.

**I. BACKGROUND**

Sunrise is a local church that offers worship services and services to assist community members who are experiencing homelessness—including, *inter alia*, providing food, clothing, healthcare, and housing assessments. (Not. Removal, Dkt. 1, ¶¶ 4–10). Texas decided to sue Sunrise, its executive director, and its property because it alleges that Sunrise's operations are unlawful under statutory and common law nuisance doctrines. (Original Pet., Dkt. 1-1, at 4). Texas argues that Sunrise's services have inflicted harm on its neighborhood in South Austin, including an elementary school nearby. Texas alleges that Sunrise has attracted a population who have engaged in public drug

use, public urination, fights, and nudity. It alleges that Sunrise patrons have left used needles and condoms on school property and harass families in the neighborhood. (*Id.* at 1–4). Texas contends that Sunrise knowingly tolerated these activities and failed to take reasonable steps to abate these alleged nuisances. (*Id.* at 37–39).

Texas brings two claims against Defendants: (1) a claim for common law public nuisance and (2) a statutory common nuisance claim, pursuant to Texas Civil Practices & Remedies Code Section 125.0015. (*Id.* at 35–41). Texas seeks temporary and permanent injunctive relief, but the scope of that relief is unclear. The Petition states that Texas wants to prohibit Sunrise from engaging in "the activities that are the subject of this Petition," which suggests that Texas may want to enjoin only Sunrise's outreach services. (*See id.* at 4). However, the Petition also contains broader language, suggesting that Texas may request injunctive relief to enjoin all of Sunrise's operations, including its operation as a church. (*See id.* at 4 ("Plaintiff seeks a temporary injunction immediately halting Sunrise's operations."); *id.* at 41 (requesting injunctive relief "ordering that Sunrise 'be closed for one year'")).

On November 26, 2024, Texas filed its Original Petition for Injunctive Relief and Application for Temporary Injunction in the 126th Judicial District Court of Travis County, Texas against Defendants. (*Id.*). The first defendant, Hilbelink, was served on December 3, 2024, and the other two defendants were served on December 5. (Not. Removal, Dkt. 1, ¶ 12). On December 3, 2024, a board member of Sunrise notified Texas's counsel that Sunrise had not yet obtained counsel and requested that Texas not schedule any hearing until Sunrise had obtained counsel. However, two days later, Texas unilaterally noticed a hearing on its application for a temporary injunction for January 6, 2025. (*Id.* ¶ 13). On December 27, 2024, Defendants filed their Answer. (*Id.* ¶ 14).

On January 2, 2025, Defendants removed the case to this Court, invoking federal question jurisdiction. Defendants argue that although Texas's Original Petition seems to raise only state law

2

claims of nuisance, those claims in fact arise under federal law. (*Id.* at 1). On January 9, 2025, Texas filed the instant motion to remand, arguing that removal is improper because this suit does not arise under federal law. (Dkt. 8). Texas also requests that this Court award it costs and expenses because Defendants' removal "lacks any basis in law or fact." Texas alleges that Defendants improperly removed this case solely to avoid the scheduled temporary injunction hearing. (*Id.* at 12). Defendants filed a response, arguing that removal was proper, (Dkt. 14), and Texas replied, (Dkt. 15).

## II. LEGAL STANDARD

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441. Accordingly, a federal court must remand a case back to state court (1) if there was a procedural defect rendering removal improper and the moving party raises the defect within thirty days of removal; or (2) if the court lacks subject matter jurisdiction. 28 U.S.C. § 1447; *see also BEPCO, L.P. v. Santa Fe Minerals, Inc.*, 675 F.3d 466, 470 (5th Cir. 2012). The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removal statute must be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). Accordingly, contested issues of fact and ambiguities of law are resolved in favor of remand. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F. 3d 242, 249 (5th Cir. 2011).

## III. DISCUSSION

### A. Federal Question Jurisdiction

Defendants argue that a federal forum is proper for this dispute because although Texas's original petition alleges only state law nuisance claims, this case in fact arises under federal law. Specifically, Defendants assert that Texas's request to halt Sunshine's operations implicates and

3

violates the Free Exercise Clause of the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). RLUIPA provides:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates the imposition of the burden on that person, assembly, or an institution—
> (A) is in furtherance of a compelling governmental interest; and
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1).

"The well-pleaded-complaint rule has long governed whether a case 'arises under' federal law for purposes of § 1331." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). Under the "well-pleaded complaint" rule, the Court looks to what "necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 841 (1989). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

An exception to the well-pleaded complaint rule is that an action may "arise under" federal law if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Texas v. Melton*, Case No. A-16-CA-863-SS, 2016 WL 4718434, at *1 (W.D. Tex. Sept. 9, 2016) (quoting *Franchise Tax. Bd. of Cal. v. Constr. Laborers Vacation Tr. For S. Cal.*, 463 U.S. 1, 27–28 (1983)). Under the substantial federal question doctrine, federal jurisdiction exists only if four elements are satisfied: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*,

538 F.3d 334, 338 (5th Cir. 2008) (citing *Grable v. Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005)). The four *Grable* elements are difficult to meet, *see The Lamar Co., L.L.C. v. Mississippi Transportation Comm'n*, 976 F.3d 524 (5th Cir. 2020), *as revised* (Sept. 24, 2020), and the category of cases that satisfy these requirements is "'special and small,'" *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). The substantial federal question doctrine is "applied in the shadow of the well-pleaded complaint rule." *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022). "Thus, the court looks to the face of a plaintiff's well-pleaded complaint to determine whether the issues it raises implicate *Grable*." *Id.*

Here, Texas's original petition only raises two state law claims: a common law public nuisance claim and a statutory common nuisance claim. No federal issue appears on the face of Texas's petition. Nonetheless, Defendants allege that Texas's nuisance claims turn on substantial questions of federal law and that all four *Grable* elements are met. The Court disagrees, finding that Defendants have not satisfied two *Grable* elements.[1]

Under the first element, Defendants must show that resolving a federal issue is necessary to the resolution of Texas's nuisance claims. Defendants claim that resolution of Defendants' religious freedom rights are necessarily implicated in two ways. Defendants' primary argument rests on the text of Texas's statutory common nuisance statute, Texas Civil Practice & Remedies Code Section 125.0015. That section begins with the following provision: "A person who maintains a place to which persons habitually go for the following purposes and who knowingly tolerates the activity and furthermore fails to make reasonable attempts to abate the activity maintains a common nuisance." Tex. Civ. Prac. & Rem. § 125.0015(a). The statute then lists twenty-eight activities that would

---

[1] Texas does not contest the second *Grable* element: that the federal issue is actually disputed. (Reply, Dkt. 15, at 6 n.4).

constitute a nuisance. *Id.* § 125.0015(a)(1)–(28). Section 125.0015 concludes with two subsections that limit the applicability of the nuisance statute. *Id.* § 125.0015(d)–(e). Subsection (e) states: "This section does not apply to an activity exempted, authorized, or otherwise lawful activity regulated by federal law." *Id.* § 125.0015(e). Defendants argue that subsection (e) requires parties bringing a common nuisance claim to prove as a threshold element of their nuisance claim that the activity that the plaintiff seeks enjoined is not "exempted, authorized, or otherwise lawful" under federal law. (Resp., Dkt. 14, at 3, 7–8). Texas, meanwhile, argues that subsection (e) is a savings clause that codifies ordinary preemption principles and that under the statute, the burden is on Defendants to prove as a defense that their activities are protected by federal law. (Mot., Dkt. 8, at 6–7, 11).

The Court declines to accept Defendants' interpretation of the common nuisance statute. It is clear based on the text that subsection (e) is not an element of Texas's claim, but rather a defense that Defendants may raise in response to alleged liability for common nuisances. If it were an element of the claim, that would mean that every plaintiff pleading a common nuisance claim would need to disprove a federal defense. However, Defendants cannot point to, and the Court cannot find, a reported decision on the common nuisance statute where a plaintiff was required to affirmatively disprove the existence of a federal defense. Instead, to succeed on their common nuisance claim, Texas needs only to prove the following three elements: (1) Sunrise maintains a place to which persons habitually go for the purposes of committing certain enumerated crimes; (2) it knowingly tolerates the activity; and (3) it fails to make reasonable attempts to abate the activity. *See, e.g.*, *Kim v. State*, 451 S.W.3d 557, 561 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Meyers v. 8007 Burnet Holdings, LLC*, 600 S.W.3d 412, 425–27 (Tex. App.—El Paso 2020, pet. denied); *see also* Public Nuisance, Plaintiff's Elements, O'Connor's Texas Causes of Action Ch. 22-B § 2 (2025 ed.). Because it is not an element of Texas's claim, subsection (e) invites Defendants to raise a federal defense as part of their case. However, "anticipated or potential defenses, including defenses based

on federal preemption, do not provide a basis for federal question jurisdiction." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008). As such, the text of the common nuisance statute does not necessitate the resolution of federal issues.

Defendants' alternative argument is that even without subsection (e), "the federal issues created by RLUIPA and the First Amendment would still be begging to be addressed" on both of Texas's nuisance claims. (Resp., Dkt. 14, at 8). Defendants argue that before shutting Sunrise down permanently, a court would have to address whether such relief is proscribed by RLUIPA and the First Amendment. (*Id.*). Such an argument does not confer jurisdiction. First Amendment issues do not appear in Texas's petition. Defendants may be liable for nuisance without regard to the religious nature of their activities. For any religious liberty issues to arise, Defendants must raise them in a responsive pleading—as they have in their Answer. (*See* Dkt. 1-7, at 2). It may well be true that in resolving this case on the merits, Defendants' religious liberty defenses could provide a legal reason for why Defendants may not be liable. But "[e]ven an inevitable federal defense does not provide a basis for removal jurisdiction." *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008). Defendants have failed to show that the resolution of Texas's claims will necessarily require the resolution of federal issues.

The fourth *Grable* element—whether the imposition of federal jurisdiction would disturb the federal-state balance—also provides an obstacle to removal. Under Defendants' analysis of Section 125.0015, every plaintiff who brings a statutory common nuisance claim in Texas would be subjecting themselves to a federal court's jurisdiction—even if the facts of a particular case have nothing to do with an activity protected under federal law. Their alternative theory—that religious liberty issues are "begging to be addressed" in this case—would lead to even more dramatic results. Any state law tort claim that would restrict the activities of a religious organization would implicate the First Amendment and RLUIPA and thus be subject to federal court jurisdiction. Both theories

of jurisdiction would "reach[] so broadly that it would sweep innumerable state-law . . . claims into federal court." *See Singh*, 538 F.3d at 340. Recognizing federal jurisdiction in this case would greatly disturb the balance between federal and state judicial responsibilities by removing many state tort cases from Texas state courts into federal courts.

Defendants have failed to demonstrate that Texas's petition arises under federal law under the well-pleaded complaint rule and the substantial federal question doctrine. In finding for Texas, the Court joins other federal district courts who have granted motions to remand in similar nuisance actions where religious organizations invoked federal jurisdiction, arguing that religious liberties issues created a substantial federal question. *See, e.g.*, *Cnty. of Los Angeles v. Sahag-Mesrob Armenian Christian Sch.*, No. CV 09-560 SVW JWJX, 2009 WL 737061, at *2 (C.D. Cal. Mar. 18, 2009) (remanding nuisance claim removed by religious school where school asserted that RLUIPA defense created a substantial federal question under *Grable*); *City of Brunswick, Ga. v. Se. Educ. Servs.*, 2023 WL 5228923, at *1 (S.D. Ga. Aug. 15, 2023) (same); *City of Detroit v. Soul Tribe Int'l Ministries*, No. 23-12828, 2024 WL 2782104, at *3 (E.D. Mich. May 30, 2024) (remanding public nuisance claim removed by a religious organization that asserted that First Amendment issues created a substantial federal question). Accordingly, the Court finds that it lacks subject matter jurisdiction over this case and must grant Texas's motion to remand.

### B. Request for Attorney's Fees

Having decided that remand is proper, the Court next turns to Texas's request for attorney's fees under 28 U.S.C. § 1447(c). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 541–42

(5th Cir. 2012). The decision about whether to award attorney's fees under this provision is at the full discretion of the court. *Howard v. St. Germain,* 599 F.3d 455, 457 (5th Cir. 2010); *Redus v. Univ. of the Incarnate Word*, 61 F. Supp. 3d 668, 679 (W.D. Tex. 2014).

Texas argues that an award of attorney's fees is warranted because Defendants' "removal of this matter was at best a transparent attempt to avoid a temporary injunction hearing." (Mot., Dkt. 8, at 12). Texas alleges that it incurred costs preparing for a temporary injunction hearing that Defendants "knew was never going to happen." (*Id.*). Defendants respond by pointing out that the removal deadline was January 2, 2025, meaning that they could not have removed this case without cancelling the temporary injunction hearing set for January 6, 2025. (Resp., Dkt. 14, at 4). Further, they stress the quick timeline in which Texas filed suit, set the hearing, and expected to hear back from Defendants. (*Id.*; *see also* Not. Removal, Dkt. 1, at 2–3).

Although the Court disagrees with Defendants' arguments surrounding the applicability of the substantial federal question doctrine, the Court does not find that Defendants lacked an objectively reasonable basis for removing this case based on that doctrine. Moreover, the Court finds that there is no evidence that Defendants removed this case in bad faith. Texas filed this suit two days before Thanksgiving. (Mot., Dkt. 8, at 3). Texas served Hilbelink a week later and gave him six hours—before he was represented by counsel—to respond to Texas's request to set the temporary injunction hearing. The same day, a Sunrise board member emailed Texas's counsel to ask that no hearings be set until Defendants obtained counsel. Texas did not abide by that request and decided to unilaterally set the temporary injunction hearing. Two days later, it served notice of the hearing on the same day that it served Sunrise with the lawsuit. (*Id.* at 3–4). Defendants filed an answer three weeks later, on December 27, 2024, and removed the case six days later on January 2, 2025. (*Id.* at 4). All of this took place around the holiday season, with Defendants' removal coming the day after the New Year holiday and on the date of their removal deadline. Texas asserts that it

9

was trying to move quickly so that the state court could grant injunctive relief before the elementary school near Sunrise resumed classes after winter break. (*Id.* at 3). However, Texas's assertion that this case is time-sensitive is undercut by the fact that Texas seems to have waited months or years before deciding to file suit. (*See* Original Pet., Dkt. 1-1, ¶ 81 (referencing alleged incident dating back to 2022); *id.* ¶ 94 (stating that the alleged nuisance issues had "reached a boiling point" in May 2024)). Given that Texas quickly and unilaterally set the temporary injunction hearing shortly after initiating this case, the Court finds no fault in how Defendants responded by removing this case before the scheduled temporary injunction hearing. Accordingly, the Court in its discretion denies Texas's request to award it attorney's fees as part of the Court's order to remand.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Texas's motion to remand, (Dkt. 8), is **GRANTED**. This case is **REMANDED** back to the 126th Judicial District of Travis County, Texas.

**IT IS FURTHER ORDERED** that Defendants' motion for judgment on the pleadings, (Dkt. 6), is **MOOT**.

The Clerk of the Court is directed to **CLOSE** this action.

**SIGNED** on June 2, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE